**FILED**
**Lucinda B. Rauback, Clerk**
**United States Bankruptcy Court**
**Augusta, Georgia**
*By jpayton at 10:26 am, Apr 18, 2013*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | |
|---|---|
| IN RE: ) | Chapter 11 Case |
| ) | Number 13-10026 |
| AUGUSTA CENTER, LLC, ) | |
| ) | |
| Debtor ) | |

## OPINION AND ORDER

Before the Court is a motion to use cash collateral filed by Augusta Center, LLC ("Debtor") and objection thereto filed by Citizens Trust Bank ("Citizens"). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(M) and the Court has jurisdiction under 28 U.S.C. §1334. For the following reasons, Citizens' objection to the use of cash collateral is denied.

## FINDINGS OF FACT

Debtor owns real property and operates a hotel located on 103 Sherwood Drive, Augusta, Georgia ("the Hotel"). Debtor operates the Hotel as a Country Inn & Suites. There is no dispute that Citizens is Debtor's only secured creditor with a first priority security interest in the Hotel. Dckt. No. 37, Ex. C-2, Deed to Secure Debt. Through the Security Deed, Debtor absolutely and unconditionally conveyed all its interest in leases, rents and revenues from the Hotel to Citizens. Id. at §1.2 and 3.8. The

Security Deed states:

> Borrower hereby absolutely and unconditionally assigns to Lender Borrower's right, title and interest in and to all current and future Leases . . . and Rents and Revenues; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Nevertheless, subject to the terms of this Section 1.2 and Section 3.8, Lender grants to Borrower a revocable license to collect and receive the Rents and Revenues. Borrower shall hold a portion of the Rents and Revenues sufficient to discharge all current sums due on the Debt for use in the payment of such sums.

Hr'g held January 16, 2013, Ex. C-2, §1.2.   The Security Deed further states:

> To further secure the Obligations, Borrower does hereby sell, assign and transfer unto Lender . . . (iii) all rents, common area charges, tax payments, insurance premiums and any other payments due to Borrower as a consequence of the use of the Property, now due or which may hereafter become due under or by virtue of any Leases or Bookings, (iv) all Income, and (v) any and all future Leases or Bookings, whether written or oral, with all security therefore, including all guaranties thereof now or hereafter affecting the possession, use and employment of the Property (subclauses (iii)-(v) are collectively referred to as "Rents and Revenues"). Borrower does hereby appoint irrevocable Lender its true and lawful attorney in its name and stead (with or without taking possession of the Property) to rent, lease or let any improvements located on the Property upon the occurrence of, and during the continuation of an Event of Default and upon such terms as Lender shall, in its [discretion], determine, and to collect all of

2

the Rents and Revenues . . . on the condition that Lender hereby grants to Borrower a license to collect and retain such Rents and Revenues . . . . Borrower expressly covenants to apply the Rents and Revenues received, after application for operating expenses permitted hereunder, to payment of the Obligations as and when the same become due and in compliance with the Other Security Documents. Such license shall be revocable by Lender upon written notice to Borrower at any time after an Event of Default under the [Loan] Documents, and immediately upon any such revocation, Lender shall be entitled to receive, and Borrower shall deliver to Lender, any and all Rents and Revenue theretofore collected by Borrower which remain in the possession or control of Borrower and all Leases, and other such agreements. It is the intention of Borrower to create and grant, and it is the intention of Lender to create and receive, a present and absolute assignment of all of the . . . Rents and Revenues now due or which may hereafter become due, but it is agreed that Lender's right to collect Rents and Revenues is conditioned upon the existence of an Event of Default under the Loan Documents.

Hr'g held January 16, 2013, Ex. C-2, §3.8.

In addition to the Security Deed, Debtor also executed a separate Assignment of Leases and Rents (the "Assignment") which states in pertinent part:

Section 1.1 <u>PROPERTY ASSIGNED</u>. Borrower hereby absolutely and unconditionally assigns and grants to Lender the following property, rights, interests and estates, now owned, or hereafter acquired by Borrower:

.

.

.

(c)   <u>Rents</u>.  All  rents,  additional  rents,

3

revenues, income, issues and profits arising from the Leases and renewals and replacements thereof

.

.

.

Section 1.3 <u>TERMINATION OF ASSIGNMENT</u>. Upon payment in full of the Debt and the delivery and recording of a satisfaction or discharge of a Security Instrument duly executed by Lender, this Assignment shall become null and void and shall be of no further force and effect.

## ARTICLE 2 - TERMS OF ASSIGNMENT

Section 2.1 <u>PRESENT ASSIGNMENT AND LICENSE BACK</u>. It is intended by Borrower that this Assignment constitute a present, absolute assignment of the Leases, Rents, Lease Guaranties and Bankruptcy Claims, and not an assignment for additional security only. Nevertheless, subject to the terms of this Section 2.1 Lender grants to Borrower a revocable license to collect and receive the Rents and other sums due under the Leases and Lease Guaranties. Borrower shall hold the Rents and all sums received pursuant to any Leases or Lease Guaranties, or a portion thereof sufficient to discharge all current sums due on the Debt, in trust for the benefit of Lender for use in the payment of such sums.

.

.

.

Section 3.1 <u>REMEDIES OF LENDER</u>. Upon or at any time after the occurrence of a default under assignment or an Event of Default (as defined in the Security Instrument) (a "Default"), and after the  passage of any applicable notice and cure period, the license granted to Borrower in Section 2.1 of this Assignment shall automatically be revoked, and Lender shall immediately be entitled to possession of all Rents and sums due under any Leases and Lease

4

Guaranties, whether or not Lender enters upon
or takes control of the Property. In addition,
Lender may, at its option, without waiving such
Default, without notice and without regard to
the adequacy of the security for the Debt,
either in person or by agent, nominee or
attorney, with or without bringing any action
or proceeding, or by a receiver appointed by a
court, dispossess Borrower and its agents and
servants from the Property, without liability
for trespass, damages or otherwise and exclude
Borrower and its agents or servants wholly
therefrom, and take possession of the Property
and all books, records and accounts relating
thereto and have, hold, manage, lease and
operate the Property on such terms and for such
period of time as Lender may deem proper and
either with or without taking possession of the
Property in its own name, demand, sue for or
otherwise collect and receive all Rents and
sums due under all Leases and Lease Guaranties,
. . . may apply the Rents, and sums received
pursuant to any Leases and Lease Guaranties to
the payment of the following in such order and
proportion as Lender in its sole discretion may
determine, any law, custom or use to the
contrary notwithstanding: (a) all expenses of
managing and securing the Property, including,
without being limited thereto, the salaries,
fees and wages of a managing agent and such
other employees or agents as Lender may deem
necessary or desirable and all expenses of
operating and maintaining the Property,
including, without being limited thereto, all
taxes, charges, claims, assessments, water
charges, sewer rents and any other liens, and
premiums for all insurance which Lender may
deem necessary or desirable, and the cost of
all alterations, renovations, repairs or
replacements, and all expenses incident to
taking and retaining possession of the
Property; and (b) the Debt, together with all
costs and reasonable attorneys fees.

5

Hr'g held January 16, 2013, Ex. C-3.   The Security Deed and Assignment were duly recorded in the public real estate records in 2010.

As a result of Debtor's default in payments, Debtor and Citizens entered into a forbearance agreement in February 2012. Debtor defaulted under the terms of the original forbearance agreement, and it was modified in June 2012.  Hr'g held January 16, 2013, Exs. C-7 and C-8.   Both forbearance agreements required Debtor's strict compliance.  On December 26, 2012, due to Debtor's failure to strictly comply with the modified forbearance agreement, Citizens accelerated all amounts due and notified Debtor that attorney fees could be avoided if the debt was paid in full ten days from receipt of the letter.  Hr'g held January 16, 2013, Ex. C-11. Citizens also included a separate notice entitled, "Revocation of Rights and Notice to Vacate."    Hr'g held January 16, 2013, Ex. C-11.  The Revocation and Notice revoked Debtor's license and gave Debtor until January 2, 2013 to vacate and surrender possession of the property.  <u>Id.</u>  The notice also informed Debtor that a new management team would enter the Hotel and take possession of "all books, records, and accounts relating to the property and will operate, manage and control the hotel property" on January 2, 2013. <u>Id.</u>   On January 2, 2013, Debtor refused to allow Citizens'

6

✎AO 72A
(Rev. 8/82)

management company to enter the Hotel.  Two days later, Debtor filed its chapter 11 bankruptcy petition.  This is before the expiration of the ten-day period for the accrual of statutory attorneys fees.

Citizens argues it took all necessary steps to revoke the license pre-petition by sending the Revocation and Notice and attempting to enter the Hotel to take possession of the rents.  As a result of  taking these steps pre-petition, Citizens argues the rents are not property of the bankruptcy estate and cannot be used by Debtor as cash collateral.  Furthermore, Citizens argues Debtor waived its right of redemption under the terms of the Security Deed.  Conversely, Debtor argues because it still had an equitable interest in the property on the petition date, and that the Hotel and rents derived therefrom are part of Debtor's bankruptcy estate pursuant to 11 U.S.C. §541(a).

### CONCLUSIONS OF LAW

The issue is whether the rent is property of the bankruptcy estate.  The parties concede if the rent is property of the bankruptcy estate, it is Citizens' cash collateral, which must be adequately protected in order for Debtor to utilize it to reorganize.

Property of the estate is defined in 11 U.S.C. §541(a):

(a) The commencement of a case under section 301, 302, or 303 of this title creates an

7

✎ AO 72A

(Rev. 8/82)

> estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
>
> .
> .
> .
>
> (6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

11 U.S.C. §541(a)(1) and (6).

The nature of Debtor's property interest on the petition date is determined under Georgia law. Butner v. U.S., 440 U.S. 48, 55 (1979)("[P]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). Under Georgia law, two opposing views emerge when determining whether rents are property of the bankruptcy estate or property of the secured creditor. One line of cases hold that when a creditor has complied with the terms of the unconditional assignment of rents provision pre-petition, it is not required to take any further action to claim the rent. See In re May, 169 B.R. 462, 470 (Bankr. S.D. Ga. 1994)("[t]he better approach under Georgia

8

law is to preserve the parties' freedom of contract in specifying the steps that a grantee must take to enforce its interest in the rents."); In re Moore, 1988 WL 1019665 *2 (Bankr. S.D. Ga. Oct. 14, 1988); In re Jones, 77 B.R. 981 (Bankr. M.D. Ga. 1987). Another line of cases requires the creditor take additional steps to dispossess the debtor in order to be entitled to the rents derived from the property. See In re Polo Club Apartments Assoc., L.P., 150 B.R. 840 (Bankr. N.D. Ga. 1993)("[T]he grantor being in possession and receiving rents may not be disturbed in his right to the rents by the security deed grantee until he takes possession or takes other appropriate action to subject the land and rents to the debt."); see also In re Keller, 150 B.R. 835 (Bankr. N.D. Ga. 1993).

Under either view, Citizens has done everything required under the Assignment to have a present choate interest in the rents. It contracted for these rents and has taken additional steps, although thwarted, in an effort to seize possession of the Hotel for purposes of receiving rent. The Assignment states upon an event of default, "after the passage of any applicable notice and cure period, the license granted to Borrower in Section 2.1 of this Assignment shall automatically be revoked, and Lender shall immediately be entitled to possession of all Rents." Hr'g held January 16, 2013, Ex. C-3, §3.1. Citizens gave notice to

9

automatically revoke the license and Citizens attempted to take possession of the Hotel in order to collect the rent.

Nevertheless, as set forth in May, having a choate interest in the rents does not end the inquiry as to whether the rents are property of the bankruptcy estate. In May the court found that although the creditor had a present choate interest in the rent, the debtor, as grantor under the security deed and assignment of rents retained a residual right to the rents. In re May, 169 B.R. at 470 citing In re Polo Club Apartments, 150 B.R. at 850. The court concluded an "absolute" assignment of rents, is not absolute in that the grantor "retains an equitable interest in the rents, and whether the interest is depicted as a 'reversionary interest', a 'right of redemption' or the like, it is an interest which becomes property of the bankruptcy estate." In re May, 169 B.R. at 471. The May court held that this equitable interest in the rents is sufficient to place the rents into the bankruptcy estate. Id.; accord In re Polo Club Apartments, 150 B.R. at 850("Even if a grantor in possession could convey an absolute right to rents, the assignment would not extinguish his equitable estate in the rents. Under an absolute assignment, a grantee only obtains a conditional right to rents as a type of security and must account to debtor-grantor for any surplus above the amount of his debt.").

✎AO 72A
(Rev. 8/82)

Similar to the provisions in May, Debtor in this case absolutely assigned the rents to the creditor prepetition. Unlike the provisions in May, Debtor retained a license in the rents. Citizens argues the license makes the current case distinguishable from May, citing In re Kingsport Ventures, L.P., 251 B.R. 841 (Bankr. E.D. Tenn. 2000). In Kingsport, the court held that the assignment of rents where the debtor was granted a license was an absolute assignment and sufficient to deprive the debtor of any interest in the rents. Kingsport, 251 B.R. at 848-49. The Kingsport court acknowledged the debtor had a subordinate equitable interest, however, the court applying Tennessee law, concluded that equitable right cannot be asserted against the lender until the debt is paid in full. Id. I find Kingsport is distinguishable because it is based on Tennessee law not Georgia. Furthermore, I disagree with the conclusion that a subordinate equitable interest excludes the rents from the bankruptcy estate. In addition, Kingsport fails to definitively settle the matter as another Tennessee bankruptcy court has disagreed with its conclusions, holding that even where debtor merely retains a license, the debtor's right to have the rent returned to it upon payment of the underlying note was a sufficient interest to constitute property of the bankruptcy estate. In re Senior Hous. Alts., Inc., 444 B.R. 386, 398-99 (Bankr. E.D. Tenn.

11

2011)(where debtor assigned all rents and was granted license, debtor still retained a right to have the rent returned to debtor upon payment of the underlying note which is a sufficient interest to constitute property of the bankruptcy estate).

The revocation of license may have given Citizens a choate interest in the rents at the time the bankruptcy petition was filed, but it did not deprive Debtor of its equitable interest. As stated in May, "[r]egardless of the language used, an assignment of rents provision cannot divorce the rents from the land from which the rents are derived." In re May, 169 B.R. at 471. The Assignment which granted the license cannot be separated from the underlying promissory note and security deed. This is evident as the consideration for the Assignment was the loan "evidenced by the Note and secured by that certain Deed to Secure Debt and Security Agreement." Hr'g held January 16, 2013, Ex. C-3, §1.2. In addition, the Assignment terminates when the Note is paid:

> Upon payment in full of the Debt and the delivery and recording of a satisfaction or discharge of a Security Instrument duly executed by Lender, this Assignment shall become null and void and shall be of no further force and effect.

Hr'g held January 16, 2013, Ex. C-3, §1.3. Furthermore, the license is revocable upon an event of default under the Security Deed and Note. Just as the court in May concluded, it is clear the

12

Assignment is tied to the Security Deed and Note.  As the court in In re Perimeter Park Inv. Assocs., Ltd. explains, "rents and profits are incorporeal hereditaments, part of the bundle of rights known as possession. . . if the debtor is entitled to continued use of the tree during the rehabilitation period, if rehabilitation is continuously demonstrated to be possible, surely he is also entitled at the same time to use of the fruits of the tree."   In re Perimeter Park Inv. Assocs., Ltd., 1 B.R. 473, 476 (Bankr. N.D. Ga. 1979).   In this case, Debtor would be unable to reorganize if deprived of the rents.  Debtor has retained an equitable interest in the Hotel and the rents are derived therefrom.  For these reasons, the rents continue to be property of the bankruptcy estate.   11 U.S.C. §541(a)(1) and (a)(6).

Citizens argues Debtor waived its equitable right to redemption.  The Security Deed contains the following provision titled "Marshaling and Other Matters":

> [Debtor] hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshaling in the event of any sale hereunder of the property of any part thereof or any interest therein.

Hr'g held January 16, 2013, Ex. C-3, §1.3.  I find this provision cannot be used to deprive Debtor of the right to the rents upon

13

payment of the underlying debt.    The waiver states it applies "to the extent permitted by law" and lists of benefits/protections that are waived including any "stay" laws, the provision waives the "benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshaling in the event of any sale hereunder of the property."    Id.    Certainly the waiver of the automatic stay in a security deed has been held as unenforceable.    In re Deb-Lyn, Inc. 2004 WL 452560 (N.D. Fla. Feb. 20, 2004); but see In re Alexander SRP Apartments, LLC, 2012 WL 1910088 (Bankr. S.D. Ga. Apr. 20, 2012)(upholding waiver of the automatic stay where waiver was part of the consideration in a subsequent forbearance agreement and not in the original loan documents).    Common law also has been very protective of a mortgagor's right of redemption.    The Supreme Court has described this doctrine:

> It is also an established doctrine that an equity of redemption is inseparably connected with a mortgage; **that is to say, so long as the instrument is one of security, the borrower has in a court of equity a right to redeem the property upon payment of the loan. This right cannot be waived or abandoned by any stipulation of the parties made at the time, even if embodied in the mortgage.** This is a doctrine from which a court of equity never deviates. Its maintenance is deemed essential to the protection of the debtor, who, under pressing necessities, will often submit to ruinous conditions, expecting or hoping to be

14

> able to repay the loan at its maturity, and
> thus prevent the conditions from being enforced
> and the property sacrificed.

Peugh v. Davis, 96 U.S. 332 (1877); see also Lewis Broad. Corp. v. Phoenix Broad. Partners, 502 S.E.2d 254, 255 (Ga. Ct. App. 1998)("[T]he common law has jealously guarded the mortgagor's equity of redemption which may not be 'fettered' or 'clogged.'. . . [I]n general any provision in the mortgage at its inception which takes away the right of the mortgagor to exercise his equity of redemption is void. The mortgagor cannot by the initial agreement bind himself not to exercise his equity to redeem the property.") citing Bromley v. Bromley, 127 S.E.2d 836 (Ga. Ct. App. 1962)("A direct agreement, part of the original transaction, whereby a chattel mortgagor, a pledgor, or a mortgagor of personal property forfeits, or clogs, or fetters his equity of redemption, is void."); 35 Am. Jur. 2d Mortgages §395 (2nd ed. 2013)("[g]enerally, a mortgagor cannot, by any agreement made contemporaneously with or as a part of the mortgage transaction, however explicit or forceful, bind himself or herself not to assert his or her right or equity of redemption"). In the current case, the waiver of the right of redemption is in the original security deed and therefore is unenforceable. See also 2 Pindar's Ga. Real Estate Law & Procedures §21-57 (6th ed.)("[A]lthough the borrower cannot waive his rights in the

15

*original loan instrument*, at any time thereafter he may by contract surrender his entire interest and redemptive rights, and this is ordinarily done by a quitclaim deed in lieu of foreclosure.")(emphasis added); <u>see also</u> <u>Gunter v. Smith</u>, 38 S.E. 374 (Ga. 1901)("[I]f the grantee in a security deed goes into possession of the land thereby conveyed under no other claim than such a deed, he is in possession simply for the purpose of applying the rents, issues, and profits to the satisfaction of his debt; and, when the net amount received by him from the proceeds of the land is equal to or greater than the amount of his debt, his right of possession ceases, and the grantor or his legal representatives, and, if none, his heirs, may bring an action to recover the land.").

 "The right of the grantor to redeem by the payment of the debt is never barred, so long as the grantee recognizes a right to redeem, and equity would by analogy decree that the right to redeem would in no event be lost until after the expiration of 10 years from the date of the last recognition by the grantee of the right to redeem." <u>Gunter</u>, 38 S.E. at 374. While the transaction in the case <u>sub judice</u> is a Security Deed and not a mortgage, the debtor still has a right of redemption. <u>See</u> <u>Wynndam Court Apartment Co. v. First Fed. Sav. & Loan Ass'n of Atlanta</u>, 50 S.E. 2d 611 (Ga. 1948)(holding that the right of redemption is treated the same whether in a

16

mortgage or security deed).

In the case sub judice the letter sent December 26, 2012, acknowledged Debtor's right to pay the debt in full and gave them 10 days to pay the debt in full in order to avoid the imposition of attorneys fees.  Debtor filed for bankruptcy the day before the ten days expired.  By this letter, Citizens recognized Debtor's right to pay off the debt in full.  For the foregoing reasons, I find Debtor retained an equitable interest in the Hotel at the petition date.

For the foregoing reasons, Citizens' Objection to Debtor's motion to use cash collateral is ORDERED DENIED.  The Clerk is directed to set a continued hearing on Citizens' Motion for Relief from Stay and Debtor's Motion for Order Authorizing Use of Cash Collateral on April 25, 2013.

SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this 17th day of April, 2013.

17

AO 72A
(Rev. 8/82)